**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ELAYNE FIGUEROA, on behalf**
**of herself and on behalf of all others**
**similarly situated,**

     **Plaintiff,**

**v.**                         **CASE NO.: 8:17-cv-01780-JSM-AEP**

**BAYCARE HEALTH SYSTEM, INC.,**

     **Defendant.**
_____/

**JOINT MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, ELAYNE FIGUEROA ("Named Plaintiff") and Defendant, BAYCARE

HEALTH SYSTEM, INC. ("Defendant"), collectively referred to herein as the "Parties," file

this Joint Motion ("Joint Motion"), with incorporated Memorandum of Law, seeking an Order:

(1) preliminarily approving the Settlement Agreement between Named Plaintiff, the putative

class, and Defendant; (2) preliminarily certifying a class for settlement purposes only; (3)

approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the

final consideration and approval of the Parties' settlement; and, finally, (5) approving the

settlement in a subsequent Order. In support of their Joint Motion, the Parties respectfully

submit the following:

**I.**      **BACKGROUND AND OVERVIEW OF SETTLEMENT**

On or about May 12, 2017, Named Plaintiff, ELAYNE FIGUEROA, filed this class

action lawsuit (the "FCRA Litigation") asserting claims against Defendant under the Fair

Credit Reporting Act ("FCRA") on behalf of herself and on behalf of a proposed class of

similarly situated individuals in the Thirteenth Judicial Circuit, In and For Hillsborough County, Florida. On July 25, 2017, Defendant removed this action to this Court (Doc. 1). Plaintiff filed her Amended Complaint on August 15, 2017 (*see* Doc. 10), and on March 19, 2018, Plaintiff filed a Motion seeking Class Certification under Rule 23 (*see* Doc. 57). The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendant (*see* Doc. 70).

The settlement provides for settlement payments to be made to the approximately 2009 class members. Defendant will create a non-reversionary common fund for Class Members consisting of Eighty-Five Thousand Dollars and Zero Cents ($85,000). The Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $42.30. If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service award, the parties anticipate that each class member will receive a net payment of approximately $20.41. The Plaintiffs' counsel represent that in their opinion this amount is consistent with FCRA class action settlements that have been approved by other federal courts. If any money remains in the fund after these distributions and after Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to BayCare Emergency Assistance Program, Inc., a non-profit charity. The proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

    A.    **<u>Allegations included in Named Plaintiff's Complaint</u>**

This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. § 1681 (2012) *et seq*. ("FCRA"). The lawsuit generally alleges that Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment purposes." Specifically, the lawsuit alleges that Defendant's inclusion of extraneous information in the disclosure and/or authorization/consent document(s) presented to its applicants violated Section 604(b)(2)(A) of the FCRA, 15 U.S.C. § 1681b(b)(2)(A).

According to Plaintiff's First Amended Complaint, Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective employees. (Doc. 10, ¶ 2). Prior to working for Defendant, Plaintiff filled out documents from Defendant that contained, among other things, two forms, including an "Authorization of Background Check" form (*see* Exhibit A to Amended Complaint, Doc. 10-1).

As explained in Plaintiff's Amended Complaint, while the use of consumer report information for employment purposes is not *per se* unlawful, it is subject to strict disclosure and authorization requirements under the FCRA. (Doc. 10, ¶ 3). Plaintiff's Amended Complaint alleges Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes without first making proper disclosures in the format required by the statute. (Doc. 10, ¶ 5). Specifically, Plaintiff alleged Defendant's application process violated the FCRA due to the inclusion of extraneous information in its FCRA disclosure. (Doc. 10, ¶ 20). The first claim in the Amended Complaint is brought against Defendant under 15 U.S.C. § 1681b(b)(2)(A)(i). (Doc. 10, p. 12).

The second claim in the Amended Complaint is brought under 15 U.S.C. § 1681b(b)(2)(A)(ii). (Doc. 10, p. 15).

Based on the foregoing alleged violations, Named Plaintiff asserted FCRA claims against Defendant on behalf of herself and a class of Defendant's employees and prospective employees. Named Plaintiff's Complaint, and Rule 23 Motion, sought to have certified the following class:

> **Improper Disclosure and Authorization Class**: All BayCare employees and job applicants who applied for or worked in a position at BayCare in the United States and who were the subject of a consumer report that was procured by BayCare within five years of the filing of this complaint through the date of final judgment as to whom BayCare used the form attached as Exhibit A to satisfy its stand-alone disclosure requirements under the FCRA.[1]

## B. Defendant's Defenses

Defendant asserted numerous defenses to the FCRA Litigation. Specifically, Defendant denied, and continues to deny, that it violated the FCRA with regard to the Named Plaintiff and/or any putative class members. Defendant asserted, and continues to assert, that its Consumer Disclosure and Authorization forms comply with the FCRA. Specifically, the Defendant maintains that the Disclosure Regarding Background Investigation form provided to the Named Plaintiff and any putative class members complied with the FCRA's disclosure mandate, and by executing the Authorization of Background Investigation form the Named Plaintiff and putative class members expressly provided Defendant the requisite written FCRA authorization to have HireRight, Inc. procure a consumer report for employment purposes. Defendant asserted, and continues to assert, that it did not violate the FCRA much less that its

---

[1] While Named Plaintiff's Amended Complaint and Motion for Class Certification specified 5 years from the date Named Plaintiff filed her Amended Complaint, the Parties have stipulated to 2 years. Specifically, the time period is May 12, 2015 through May 12, 2017.

alleged conduct constituted a willful violation of the FCRA. The Defendant denies that it engaged in any wrongdoing or liability in connection with any facts or claims that have or could have been alleged against it in this action. Moreover, the Defendant denies that the claims asserted by the Named Plaintiff are suitable for class treatment other than for settlement purposes. For example, Defendant asserted, and continues to assert, that Named Plaintiff and the alleged putative class members lack standing to assert the instant claims, that Named Plaintiff and her counsel are not adequate representatives for class certification, that Named Plaintiff could not establish the requisite predominance and superiority, commonality, and typicality necessary for class certification, and that Named Plaintiff's and the alleged putative class members' claims are barred by the applicable statute of limitations. The Defendant was prepared to file a response in opposition to the Named Plaintiff's Rule 23 motion, but this settlement was reached prior to the response deadline.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues

presented in this case, the inconveniences involved, and the disruption to its business operations.

### C. <u>Procedural Background</u>

To initiate the action, Named Plaintiff filed her Complaint, Amended Complaint, and Rule 23 Motion for Class Certification. (Doc. 57). Plaintiff also propounded class-wide discovery. Defendant filed its answers and affirmative defenses, (Doc. 28). During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Class (approximately 2,009 people), and the FCRA disclosure and authorization/consent forms received by the Named Plaintiff. Prior to the deadline for Defendant to respond to Named Plaintiff's Motion for Class Certification, the Parties filed a Motion seeking a stay from the Court pending mediation. (Doc. 66). The Parties' Motion to Stay was granted (*see* Doc. 67), and mediation was held on May 10, 2018.

### D. <u>Settlement Negotiations and Mediation</u>

The Parties attended an all-day mediation before a highly-respected mediator, Mark A. Hanley, on May 10, 2018. As explained in the mediation report filed by Mr. Hanley with the Court (*see* Doc. 70), the parties were able to come to a resolution and settle the matter.

As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement") attached hereto as Exhibit A, for which they now seek Court approval. The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising

from, related to, or based upon the FCRA Litigation as to the Named Plaintiff and all putative class members.

Based on the information available, the Parties hereby represent and warrant that a list of the members of the below-defined Settlement Class will be provided to the settlement administrator, American Legal Services LLC, upon filing of the instant Motion. The Parties have confirmed that the Settlement Class constitutes all the individuals from May 12, 2015 to May 12, 2017 (the date the complaint was filed in state court) who signed the Authorization of Background Investigation form and for whom a consumer report was obtained with their written consent encompassed by the proposed Settlement Class definition. Importantly, this settlement does not preclude any of the individual Settlement Class members from opting-out of the class and pursuing their own claims, should they be so inclined.

## II.     THE PROPOSED SETTLEMENT

### A.     The Proposed Settlement Class

The Settlement Agreement defines the proposed Settlement Class as follows: "All BayCare employees and job applicants who applied for or worked in a position at BayCare in the United States and who were the subject of a consumer report that was procured by BayCare within two years of the filing of this complaint through the date of final judgment as to whom BayCare used the "Consumer Disclosure and Authorization form," "Authorization of Background Investigation," provided by HireRight, Inc., to satisfy its stand-alone disclosure requirements under the FCRA," (referenced herein as the "Settlement Class").

### B.     Benefits to the Settlement Class and Named Plaintiff

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay $85,000 to the Common Fund. The parties negotiated the case on a common fund basis, meaning that the settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and administrative expenses. The parties did not negotiate attorneys' fees until after all terms related to the size of the common settlement fund, and the class definitions, were agreed upon.

With the Settlement Class comprised of approximately 2,009 members, each Settlement Class member who does not opt-out of the settlement will receive a gross settlement payment of $42.30. This a "claims paid" settlement. Class members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Class members who do not opt out will simply receive checks after final approval. If settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient. If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service award, the parties anticipate that each Class Member will receive a net payment of approximately $20.41.

Subject to this Court's approval, the Named Plaintiff shall have, in addition to the claim provided her as a member of the Settlement Class, an additional claim in the sum of $5,000 as an Incentive Payment for the services provided to the Settlement Class in connection with the prosecution of this action. The Settlement Agreement also provides that Named Plaintiff's Counsel's fees and service award for the Named Plaintiff are to come out of the Common Fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for

up to 33 and 1/3% of the fund as attorneys' fees and costs. Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees or class representative service award being approved.

### C.   Administration of Notice

The Parties have agreed to utilize a private, third-party vendor, American Legal Services LLC, to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Common Fund.

Within ten (10) business days of the Court's preliminary approval of the Settlement Agreement, the Settlement Administrator shall mail the Notice Form, attached to the Settlement Agreement as Exhibit A, by U.S. mail to all Settlement Class members. The Notice Form shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class members' eligibility to recover their pro-rata portion of the settlement proceeds, and will include an explanation of the "claims paid" process, as well as an explanation as to what happens if the settlement checks are not timely cashed. Namely, the funds will be made part of a donation to a *cy pres* recipient.

The Notice shall inform Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so within 60 days; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after Defendant files the required CAFA notices); and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Class members who choose to opt out or object to the settlement may do so within sixty (60) days of the Notice mailing date. If the Court grants final approval of the settlement, Defendant will transfer the full amount of the settlement Common Fund to the Settlement Administrator within ten (10) business days of the Court's Order. Settlement checks will be mailed to all Class members within ten (10) business days after receipt by the Settlement Administrator of the Common Fund monies. To the extent any money remains in the fund after these distributions and after Class members have had 60 days to cash their settlement checks, such monies shall be paid as a *cy pres* donation to Bay Area Legal Services, subject to Court approval.

### D.    Attorneys' Fees and Expenses

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to thirty-three and one-third percent (33 1/3%) of the fund as attorneys' fees and costs. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant agrees that it will not oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

### E.    Class Action Fairness Act Notice

The Settlement Administrator will cause notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA"). The Settlement Administrator will timely serve upon the appropriate State official of each State in which a Settlement Class member resides and the United States Attorney General, a notice of the proposed settlement, in accordance with 28 U.S.C. § 1715 (2012), and will file a notice of compliance with the Court. This must be done within ten days

10

of the filing of the Parties' proposed Settlement Agreement in order to satisfy CAFA requirements.

## III.    PRELIMINARY CLASS CERTIFICATION

As part of preliminary approval of the settlement, the Parties respectfully seek certification of the Settlement Class for the purposes of settlement, as described above.

### A.    The Settlement Class Meets the Requirements of Rule 23(a)[2]

A court can certify a settlement class where the proposed class and proposed class representatives meet the four prerequisites in Fed. R. Civ. P. 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Fed. R. Civ. P. 23(b). Here, pursuant to Rules 23(a) and 23(b)(3), Named Plaintiff seeks certification of a defined settlement class (the "Settlement Class") to consist of:

> **Improper Disclosure and Authorization Class:** All BayCare employees and job applicants who applied for or worked in a position at BayCare in the United States and who were the subject of a consumer report that was procured by BayCare within two years of the filing of this complaint through the date of final judgment as to whom BayCare used the "Consumer Disclosure and Authorization form," "Authorization of Background Investigation," provided by HireRight, Inc., to satisfy its stand-alone disclosure requirements under the FCRA.

Certification of a class under Fed. R. Civ. P. 23(a) and (b) is subject to a slightly different analysis where certification is contested than where, as here, a proposed settlement is under review. "In its preliminary assessment of the fairness of the proposed agreement, the Court must take care not to intrude upon the private settlement negotiations of the parties any

---

[2] Defendant does not challenge certification of the Settlement Class for the purpose of this settlement and joint motion for preliminary approval only; however, Defendant does not concede that certification is appropriate under Fed. R. Civ. P. 23 for any other purpose and in fact was prepared to challenge the propriety of certification but for the settlement.

more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Smith v. Ajax Magnethermic Corp.*, CASE NO. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, at *14, *17-18 (N.D. Ohio Nov. 6, 2007); *see also La. Wholesale Drug Co. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),* 99-MDL-1317-SEITZ/KLEIN, Case No. (S.D. Fla.) 98-3125, Case No. (S.D. Fla.) 99-7143, 2005 U.S. Dist. LEXIS 46189, at *14 (S.D. Fla. Mar. 17, 2005) ("All proposed classes must meet the requirements of Rule 23, but the fact of settlement can have an effect on the analysis.")

The proposed Settlement Class here meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation.

### 1.    Numerosity

The proposed class of approximately 2009 individuals is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class plaintiffs is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.*, 2013 U.S. Dist. LEXIS 130591, at *4 (2013) (*citing Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Further, the nature and size of the individual claims also make joinder impracticable. Under the FCRA if the Court determines that Defendant willfully failed to comply with the FCRA, as alleged in Named Plaintiff's Complaint but which Defendant specifically denies,

Defendant is liable for statutory damages (ranging between $100 and $1,000), and attorneys' fees and costs. *See* 15 U.S.C. § 168ln.[3] As such, most of the members of the proposed class do not have claims which are sufficiently large for individuals to pursue on their own. Courts have found modest claims such as these are well suited for class action. *Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013) (FCRA class certification granted based on nearly identical claims); *see also Alberts v. Nash Finch Co.*, 245 F.R.D. 399 (D. Minn. 2007) (small size of individual claims considered in certifying class action for individuals in a WARN Act action). Additionally, the judicial resources required to remedy the potential 2009 FCRA claims against Defendant, as could be at issue in this lawsuit, would be tremendous and wasteful. Therefore, the Settlement Class of approximately 2009 persons here is sufficiently numerous.

### 2.   <u>Typicality</u>

Under Fed. R. Civ. P. 23(a)(3), typicality does not require identical claims. The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *6.[4] "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary." *Id.* (citing *Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 627 (M.D.

---

[3] Punitive damages are also available in certain instances but are not at issue here.

[4] *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) ("typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.")

Fla. 2010). A "class representative must have the same interest and suffer the same injury as the class members" in order to be typical under Rule 23(a)(3). *Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 627 (M.D. Fla. 2010). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (citing *Cooper v. S. Co.*, 390 F.3d 695, 713 (11th Cir. 2004). The typicality requirement "is said to limit the class claims to those fairly encompassed by the named plaintiff's claims" *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the Plaintiffs allege that the legal theory underlying the claims of the putative class members is virtually identical to the Named Plaintiff's FCRA claims. Here, all of the claims are based on a substantially similar, if not identical, set of facts and are grounded in the same legal theories; namely, that Defendant's FCRA form(s) allegedly failed to satisfy the requirements under the FCRA. The Class Representative's claims are "typical" of the Class and, consequently, the typicality requirement of Rule 23(a)(3) has been met. *See* Fed. R. Civ. P. 23(a)(3); *see also Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *16 (W.D. Pa. Dec. 2, 2013)(finding typicality with regards to pre-adverse action notice).

### 3. <u>Commonality</u>

The United States Supreme Court explained that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members "have suffered the same injury."*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)). Courts in this Circuit have applied *Dukes* to the commonality analysis, but caution that *Dukes* does not set an impossible standard for commonality. "[T]his prerequisite does not mandate that all questions of law or fact be

common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike." *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *4 (internal quotations and citation to Dukes, 131 S. Ct. at 2556, and others omitted); *see also Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394-LSC, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012) (citing *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009)).

In the instant case, the essence of Named Plaintiff's claims posit that Defendant allegedly failed to provide sufficient notice to class members, pursuant to the requirements of the FCRA. Determining liability on these claims will require resolving numerous common questions of fact, including, but not limited to: (1) whether Defendant's "CONSUMER DISCLOSURE AND AUTHORIZATION FORM Disclosure Regarding Background Investigation" form and its "Authorization of Background Investigation" form satisfy the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); (2) whether the inclusion of alleged extraneous information in the forms violates the FCRA; and, (3) whether Defendant acted willfully in its alleged failure to satisfy the requirements under the FCRA, which is relevant to damages. *See* 15 U.S.C. § 1681n and 15 U.S.C. § 1681s; *see also Singleton v. Domino's Pizza, L.L.C.*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (granting final certification for the Settlement classes under the FCRA).

Over the years numerous FCRA classes have been certified in cases in which common documents or forms have been provided to class members, or when a defendant's purportedly uniform policies and procedures impacted class members in the same way. In such circumstances, courts have found a single common question of law or fact will suffice. *See,*

*e.g.,* M*urray v. E\*Trade Fin. Corp.,* 240 F.R.D. 392, 396 (N.D. Ill. 2006) (finding commonality and certifying FCRA class when all class members received the same mailer); *Murray v. New Cingular Wireless Servs., Inc.,* 232 F.R.D.295 (N.D. Ill. 2005) (same); *Walker v. Calusa Investements, L.L.C.*, 244 F.R.D. 502 (S.D. Ind. 2007) (same); *Kudlicki v. Capital One Auto Fin.*, 241 F.R.D. 603 (N.D. Ill. 2006) (same);*see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 411 (E.D. Pa. 2010) (finding commonality where class members sought statutory damages under the FCRA and the case turned on whether the defendants' alleged conduct was willful); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 485 (N.D. Ga. 2006) (finding commonality and certifying FCRA class when defendant consumer reporting agency consistently and as a matter of policy failed to provide full file disclosures to consumers who requested them); *Summerfield v. Equifax Info. Servs. L.L.C.*, 264 F.R.D. 133, 139 (D.N.J. 2009) (finding commonality and certifying FCRA class when consumer reporting agency sent allegedly misleading form letter to consumers who disputed information on their reports); *Chakejian v. Equifax Info. Servs. L.L.C.*, 256 F.R.D. 492 (E.D. Pa. 2009) (same); *Gillespie v. Equifax Info. Servs., L.L.C.*, No. 05 C 138, 2008 WL 4614327, at \*4 (N.D. Ill. Oct. 15, 2008) (finding commonality and certifying FCRA class when consumer reporting agency's standard procedure allegedly caused inaccurate reporting); *Williams v. LexisNexis Risk Mgmt.*, No. 3:06cv241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (finding commonality and certifying FCRA class when claim revolved around consumer reporting agency's procedures for notifying class members that adverse public record information about them was being reported).

The Plaintiffs allege that the claims of the Settlement Class members are based on the same set, or a similar set, of operative facts. An award of damages to one Settlement Class member for a violation of the FCRA would justify the award of damages to the remaining individuals in the same Settlement Class on the same legal theory, subject to the same defenses. Even if the award of damages were to vary slightly among class members (which it does not), the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003). Accordingly, the requirement of commonality has been met.

### 4. <u>Adequacy of Representation</u>

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (citing *Busby*, 513 F.3d at 1323).

Here, the Plaintiffs allege that the adequacy-of-representation requirement has been met. The Named Plaintiff, Elayne Figueroa, is adequate given that her interests are equivalent to those of the Settlement Class. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class members in prosecuting her claims and, in fact, participated actively in the FCRA Litigation by assisting Class Counsel in developing the facts necessary to file the

Complaint, and by appearing at mediation and supporting the claims of her fellow Settlement Class members.

With respect to Class Counsel, the proposed attorneys have extensive class and collective action experience, as detailed in the declarations of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A., filed contemporaneously herewith. (Decl. of L. Cabassa, Ex. B; Decl. of B. Hill, Ex. C). When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in FCRA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.,* 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

Proposed Class Counsel has represented Rule 23 classes in other cases. For example, the undersigned were recently appointed as co-class counsel in another nationwide FCRA case styled *Brown, et al. v. Lowe's Companies, Inc., et al.,* Case No.: 5:13-CV-00079-RLV-DSC, currently pending in the United States District Court for the Western District of North Carolina. Additionally, Mr. Cabassa and Mr. Hill have demonstrated diligence in pursuit of class claims here. They already filed a motion seeking class certification and propounded class wide

discovery. Counsel experienced in plaintiffs' representation in class actions is generally considered adequate under Rule 23(a)(4) in this Circuit. *See Waters*, 2012 U.S. Dist. LEXIS 99129, at *28 (approving class counsel as adequate where "Plaintiffs' attorneys have demonstrated extensive experience as litigators in federal court class action litigation."). Thus, Plaintiff's proposed Class Counsel satisfied Rule 23.

### B.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the Plaintiffs allege that the proposed Settlement Class meets the requirements of Fed. R. Civ. P. 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

#### 1.    Predominance

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Issues requiring generalized proof should predominate over the issues requiring individualized proof. *Kerr v. W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989). In essence, the Court must determine "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from

19

degenerating into a series of individual trials. *Andrews v. AT&T, 95* F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The central common issues in this case are whether Defendant's FCRA forms satisfy the notice and authorization requirements under the FCRA and, if not, whether Defendant's alleged failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all Settlement Class members in broad strokes. Thus, class certification is appropriate. *See Reardon*, 2013 WL 6231606, at *18 (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] based on the different reasons for which [defendant] allegedly declined to hire different [class] members is not fatal to the predominance requirement's fulfillment.").

2.     **Superiority**

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Fed. R. Civ. P. 23(b)(3) analysis. Given the low amount of damages for members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members,

the individual interest in controlling the case through separate actions is relatively low. *See Kizer v. Summit Partners, L.P.*, No. 1:11-CV-38, 2012 U.S. Dist. LEXIS 63795, at *20 (E.D. Tenn. May 7, 2012).

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Larsen v. Union Bank, N.A.* (*In re Checking Account Overdraft Litig., MDL No. 2036*), 275 F.R.D. 666, 679 (S.D. Fla. 2011). The Settlement Agreement -- if approved -- will allow all claims by the Settlement Class to be resolved in one case. Finally, under the Fed. R. Civ. P. 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *21 (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Hence, the superiority analysis under Fed. R. Civ. P. 23(b)(3) is met. *See Smith*, 2007 U.S. Dist. LEXIS 85551, at *12-14 (finding superiority under Rule 23(b)(3)); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20-21 (same); *Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue). Concentrating all the potential litigation concerning the FCRA rights of Named Plaintiff and the Settlement Class in this Court will avoid a multiplicity of suits while also conserving judicial resources and the resources of the

Parties. Thus, this proposed settlement is the most efficient means of resolving the FCRA claims of the Named Plaintiff and Settlement Class members.

### C.    The Class Notice Meets the Requirement of Rule 23(c)

#### 1.    Contents of Notice

The Parties submit that the proposed Notice and Official Notice Form (hereinafter "Class Notice"), a copy of which is attached as Exhibits A and B to the Settlement Agreement (Ex. A), meet the requirements of Fed. R. Civ. P. 23(c)(2)(B). That rule, in pertinent part, provides as follows:

Under Fed. R. Civ. P. 23(c)(2)(B), the notice must concisely state in plain, easily understood language:

(i)    the nature of the action;

(ii)    the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Class Notice satisfies each of the foregoing requirements. The Class Notice summarizes the nature of the pending FCRA Litigation and the Settlement Agreement's essential terms, and provides each Settlement Class member with an individualized, projected gross settlement payment, exclusive of attorneys' costs and fees. The Class Notice further discusses the nature of the action, describes the Settlement Class definition, and informs Settlement Class members of the Class claims and the Parties' contentions and defenses. The Class Notice also states that a Settlement Class member may enter an appearance through

counsel. The right of the Settlement Class members to exclude themselves, and the time, manner, and process for doing so, is prominently detailed in the Class Notice. The Class Notice also explains in clear terms that the Agreement, when approved, will be binding on all members of the Settlement Class who do not exclude themselves. The Class Notice also apprises the Class, among other things, that complete information regarding the Settlement Agreement is available upon request from Class Counsel. In addition, the Class Notice informs the Settlement Class of the request for the approval of Class Counsel's attorneys' fees to be paid from the common fund. *See* Fed. R. Civ. P. 23(h).

2. <u>**Manner of Notice**</u>

As to the manner of giving notice, Fed. R. Civ. P. 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin, 41*7 U.S. 156, 173 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

The Settlement Agreement provides that a Court-approved notice shall be mailed to the last known address of each Settlement Class member, as reflected in Defendant's records, or as instructed by the Settlement Class member through Class Counsel. The mailing and the fairness hearing will be timed in compliance with CAFA so that the members of the Settlement Class will have not less than 90 days from the date of delivery of the mailing to object to the Settlement Agreement and to appear by counsel. *See* 28 U.S.C. § 1715(d) (requiring fairness

hearing no less than 90 days after service on officials). In the case of any returned envelopes, the Claims Administrator will attempt to obtain valid addresses based on a reasonable search. The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.

        **D.**      <u>**The Settlement is Fair, Adequate, and Reasonable**</u>

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (citing *Gottfried v. Germain* (*In re CP Ships Ltd. Sec. Litig.*), 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (2012) (citations and quotations omitted).

As set forth above, continuing the FCRA Litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. The Defendant has at all times maintained that it did not violate the FCRA. Because this case settled, Named Plaintiff had yet to survive class certification, summary judgment, and/or a

trial. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g.,* I*n re PaineWebber Pshps. Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mex. Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001). Class Members would have received nothing if they were not successful. Therefore, it is reasonable for the Class Members "to take the bird in the hand instead of the prospective flock in the bush." *Pinsker v. Borders, Inc.* (*In re BGI, Inc.*), 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful. Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23-24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").

In the FCRA context, the gross *pro rata* Settlement Class member recovery of $42.30 in this settlement is in line with per class member settlement amounts in similar cases under the FCRA. *See, e.g. Simons v. Aegis Communications Group,* No. 2:14-cv-04012, Order Granting Preliminary Approval (W.D. Mo. Oct. 15, 2014) (ECF No. 29) (preliminarily approving improper disclosure settlement with payment of $35 per class member); *Townsend*

*v. Sterling Jewelers Inc*., No. 1:13-cv-3903, Plaintiff's Motion for Final Approval of Class Action Settlement (N.D. Ill. August 15, 2014) (ECF No. 54) (requesting approval of pre-adverse action class claim where class members who submitted a claim form would receive $50) and *Townsend*, Minute Entry Approving Settlement (N.D. Ill. Sept. 15, 2014) (ECF No. 58); *Marcum v. Dolgencorp, Inc*., No. 12-cv-108, Memorandum in Support of Joint Motion For Preliminary Approval of Settlement, (E.D. Va. Oct. 15, 2014) (seeking approval for settlement of inadequate

disclosure claim with payments to class members of $53) and *Marcum*, Order of Preliminary Approval of Class Action Settlement (E.D. Va. Oct. 16, 2014) (ECF No. 78) (approving settlement); *Beverly v. Wal-Mart Stores, Inc*., No. 3:07-cv-469, Order Granting Final Approval (E.D. Va. May 1, 2009) (ECF No. 39) (approving settlement providing for $54 gross amount per class member).

   The Settlement therefore is within the range of other large-scale FCRA class action cases. The Settlement was reached after contentious litigation, as well as after an all-day mediation that was followed by a series of post-mediation settlement discussions. Defendant's deadline to respond to Named Plaintiff's Motion for Class Certification was also looming as the Court Ordered litigation stay was about to expire.

   On one hand, there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed. Under the Parties' Settlement Agreement the Settlement Class members can quickly realize a significant portion of their possible FCRA claims from the Settlement Fund, even if the amount

is slightly less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other members of the Settlement Class will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and settlement notice.

IV.    **CONCLUSION**

The Agreement is in the best interest of the Parties and is fair and reasonable to all concerned. *WHEREFORE*, the Parties respectfully request that the Court enter an order: (1) preliminarily approving the Agreement between Named Plaintiff, on her own behalf and on behalf of the Settlement Class of similarly situated applicants to, and current and former employees of Defendant; (2) preliminarily certifying the above-described Settlement Class for settlement purposes; (3) approving the form and manner of Notice to Class and the right to Object to the Agreement; (4) scheduling a Fairness Hearing for the Final Consideration and approval of the Agreement; and (5) finally approving the settlement in a subsequent Order.

Respectfully submitted this 19th day of July, 2018.

/s/Thomas M. Gonzalez
**THOMAS M. GONZALEZ**
Florida Bar Number: 192341
**NATHAN J. PAULICH**
Florida Bar Number: 85190
**Thompson, Sizemore, Gonzalez & Hearing, P.A.**
201 North Franklin Street, Suite 1600
Tampa, FL 33602
Telephone: (813) 273-0050
Facsimile: (813) 273-0072
Email: tgonzalez@tsghlaw.com
***Attorneys for Defendant***

/s/Luis A. Cabassa
**LUIS A. CABASSA**
Florida Bar Number: 0053643
Direct Dial: (813) 379-2565
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: (813) 337-7992
**Wenzel Fenton Cabassa, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: (813) 224-0431
Direct Dial: (813) 379-2565
Facsimile: (813) 229-8712
Email: lcabassa@wfclaw.com
Email: twells@wfclaw.com
***Attorneys for Plaintiff***