UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ELAYNE FIGUEROA, on behalf
of herself and on behalf of all others
similarly situated,**

    **Plaintiff,**

v.                                        **CASE NO.: 8:17-cv-01780-JSM-AEP**

**BAYCARE HEALTH SYSTEM, INC.,**

    **Defendant.**

_____/

**JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

On July 20, 2018, the Court granted the Parties' Joint Motion for Preliminary Approval of the class-wide settlement ("Settlement") of the Fair Credit Reporting Act ("FCRA") claims asserted against Defendant. (Doc. 75). The Settlement provides monetary relief to 2,009 people who will all receive checks without having to return a claim form. Not a single Class Member objected to the settlement and only 2 Class Members have opted out. Given the Settlement's reasonableness, fairness, and adequacy, and the overall favorable reaction of the Class, following the Fairness Hearing Scheduled for November 14, 2018, the Court should grant Final Approval of the Settlement. A proposed Order granting this Motion is attached hereto as Exhibit A, and the Settlement Agreement is attached as Exhibit B. In support of their Joint Motion, the Parties respectfully submit the following:

**I.**      **BACKGROUND AND OVERVIEW OF SETTLEMENT**

On or about May 12, 2017, Named Plaintiff, ELAYNE FIGUEROA, filed this class action lawsuit (the "FCRA Litigation") asserting claims against Defendant under the Fair Credit Reporting Act on behalf of herself and on behalf of a proposed class of similarly situated

individuals in the Thirteenth Judicial Circuit, In and For Hillsborough County, Florida. On July 25, 2017, Defendant removed this action to this Court (Doc. 1). Plaintiff filed her Amended Complaint on August 15, 2017 (*see* Doc. 10), and on March 19, 2018, Plaintiff filed a Motion seeking Class Certification under Rule 23 (*see* Doc. 57). The Parties provided notice to this Court that they reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendant (*see* Doc. 70). On July 20, 2018, this Court granted preliminary approval of the Class Action Settlement and certified the class for settlement purposes only. (Doc. 75).

The settlement provides for settlement payments to be made to the approximately 2,009 class members. Defendant will create a non-reversionary common fund for Class Members consisting of Eighty-Five Thousand Dollars and Zero Cents ($85,000). The Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $42.30. This gross amount is consistent with FCRA class action settlements that have been approved by other federal courts. If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service award, the parties anticipate that each class member will receive a net payment of approximately $20.41. If any money remains in the fund after these distributions and after Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to BayCare Emergency Assistance Program, Inc., a non-profit charity. The proposed settlement is fair and reasonable, and should be granted final approval by the Court.

    **A.**    <u>**Allegations included in Named Plaintiff's Complaint**</u>

This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. § 1681 (2012) *et seq.* ("FCRA"). The lawsuit generally alleges that

Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment purposes." Specifically, the lawsuit alleges that Defendant's inclusion of extraneous information in the disclosure and/or authorization/consent document(s) presented to its applicants violated Section 604(b)(2)(A) of the FCRA, 15 U.S.C. § 1681b(b)(2)(A).

According to Plaintiff's First Amended Complaint, Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective employees. (Doc. 10, ¶ 2). Prior to working for Defendant, Plaintiff filled out a job application packet from Defendant that contained, among other things, two forms, including an "Authorization of Background Check" form (*see* Exhibit A to Amended Complaint, Doc. 10-1).

Plaintiff's Amended Complaint alleges Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes without first making proper disclosures in the format required by the statute. (Doc. 10, ¶ 5). Specifically, Plaintiff alleged Defendant's application process violated the FCRA due to the inclusion of extraneous information in its FCRA disclosure. (Doc. 10, ¶ 20). The first claim in the Amended Complaint is brought against Defendant under 15 U.S.C. § 1681b(b)(2)(A)(i). (Doc. 10, p. 12). The second claim in the Amended Complaint is brought under 15 U.S.C. § 1681b(b)(2)(A)(ii). (Doc. 10, p. 15).

Based on the foregoing alleged violations, Named Plaintiff asserted FCRA claims against Defendant on behalf of herself and a class of Defendant's employees and prospective employees. Named Plaintiff's Complaint, and Rule 23 Motion, sought to have certified the following class:

> **Improper Disclosure and Authorization Class**: All BayCare employees and job applicants who applied for or worked in a position at BayCare in the United States and who were the subject of a consumer report that was procured by BayCare within five years of the filing of this complaint through the date of final judgment

as to whom BayCare used the form attached as Exhibit A to satisfy its stand-alone disclosure requirements under the FCRA.[1]

### B.   Defendant's Defenses

Defendant asserted numerous defenses to the FCRA Litigation. Specifically, Defendant denied, and continues to deny, that it violated the FCRA with regard to the Named Plaintiff and/or any putative class members. Defendant asserted, and continues to assert, that its Consumer Disclosure and Authorization forms comply with the FCRA. Specifically, the Defendant maintains that the Disclosure Regarding Background Investigation form provided the Named Plaintiff and any putative class members complied with the FCRA's disclosure mandate, and by executing the Authorization of Background Investigation form the Named Plaintiff and putative class members expressly provided Defendant the requisite written FCRA authorization to have HireRight, Inc. procure a consumer report for employment purposes. Defendant asserted, and continues to assert, that it did not violate the FCRA much less that its alleged conduct constituted a willful violation of the FCRA. The Defendant denies that it engaged in any wrongdoing or liability in connection with any facts or claims that have or could have been alleged against it in this action.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or

---

[1] While Named Plaintiff's Amended Complaint and Motion for Class Certification specified 5 years from the date Named Plaintiff filed her Amended Complaint, due to usage of a specific form the Parties have stipulated to 2 years. Specifically, the time period is May 12, 2015 through May 12, 2017.

municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.     Procedural Background

To initiate the action, Named Plaintiff filed her Complaint, Amended Complaint, and Rule 23 Motion for Class Certification. (Doc. 57). Plaintiff also propounded class-wide discovery. Defendant filed its answers and affirmative defenses, (Doc. 28). During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Class (approximately 2,009 people), information on Defendant's background check process, and the FCRA disclosure and authorization/consent forms received by the Named Plaintiff. Prior to the deadline for Defendant to respond to Named Plaintiff's Motion for Class Certification, the Parties filed a Motion seeking a stay from the Court pending mediation. (Doc. 66). The Parties' Motion to Stay was granted (*see* Doc. 67), and mediation was held on May 10, 2018. Finally, on July 20, 2018, this Court granted preliminary approval of the Class Action Settlement and certified the class for settlement purposes only. (Doc. 75).

### D.     Settlement Negotiations and Mediation

The Parties attended an all-day mediation before a highly-respected mediator, Mark A. Hanley, on May 10, 2018. As explained in the mediation report filed by Mr. Hanley with the Court (*see* Doc. 70), the parties were able to come to a resolution and settle the matter.

As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement") attached hereto as Exhibit B, for which they now seek Court final approval. The Parties have agreed to fully and finally compromise, settle, and resolve any and all

demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon the FCRA Litigation as to the Named Plaintiff and all putative class members.

Based on the information available, the Parties hereby represent and warrant that a list of the members of the below-defined Settlement Class will be provided to the settlement administrator, American Legal Services LLC, upon filing of the instant Motion. The Parties have confirmed that the Settlement Class constitutes all the individuals from May 12, 2015 to May 12, 2017 (the date the complaint was filed in state court) who signed the Authorization of Background Investigation form and for whom a consumer report was obtained with their written consent encompassed by the proposed Settlement Class definition. Importantly, this settlement does not preclude any of the individual Settlement Class members from opting-out of the class and pursuing their own claims, should they be so inclined.

### E. **Preliminary Settlement Approval and Motions for Fees and Costs.**

On July 20, 2018, the Court preliminarily approved the Settlement and preliminarily certified the Settlement Class for settlement purposes. (Doc. 75). No Class Members objected to the Settlement, the requested fees, costs, or incentive award sought.

### F. **Class Notice.**

On or about August 15, 2018, notices of the proposed Settlement were mailed by third-party vendor American Legal Services LLC ("ALS") to the approximately 2,009 persons who constitute the Settlement Class. (*See* ALC Declaration ("ALC Decl.")). The notice mailed included Class Counsel's phone number and mailing address which Class Members were free to contact with general questions about the settlement, or to request exclusion from the settlement. Class Counsel received no requests for exclusion, and zero requests for objection. Both of these factors weigh heavily in favor of approving the settlement.

### G. Class Member Reactions.

The notice period closed on October 15, 2018. As of the date of this filing, there have been only **2** opt-outs from Class Members and **zero** objections to the Settlement (*See* ALC Decl. ¶¶, 10, 12). Therefore, the Class Member's reaction to the Settlement was unquestionably positive.

### H. Relief to Be Provided After the Settlement Becomes Effective.

If the Settlement is granted final approval, Defendant will establish an $85,000 Common fund within ten (10) business days of the Effective Date. A $5,000 incentive for the Named Plaintiff, the costs of administration, and attorneys' fees and costs will come from the Common fund. The Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement. Members of the class will receive a *pro rata* net amount of the settlement fund totaling approximately $20.41. If any money remains in the fund after these distributions and after Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a cy pres donation to the above-named non-profit 501(c)(3) charity.

### I. Attorneys' Fees and Expenses

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to thirty-three and one-third percent (33 1/3%) of the fund as attorneys' fees and costs. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant agrees that it will not oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

## ARGUMENT

Fed. R. Civ. P. 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit

that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.' " *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). When examining the fairness, adequacy, and reasonableness of a settlement, the Eleventh Circuit requires a district court to examine a number of factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (*quoting Bennett*, 737 F.2d at 986), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). When evaluated under these factors, the Parties' settlement is fair, adequate, and reasonable.

### A. Success at Trial Is Uncertain.

Significant obstacles and risk would face the members of the settlement class if this case were to proceed to trial. Further litigation would have been complicated, protracted, and expensive. Defendant asserted numerous defenses, which collectively increased the risk of the class being unable to establish liability and damages. The Settlement represents a gross recovery of almost $43.00 for each member of the Class. The monetary recovery for the Classes is substantial when compared to what the Classes would receive had the case been litigated to judgment. The FCRA provides for statutory damages of between $100 and $1000 for each willful violation. 15 U.S.C. §1681n(a)(1). This same range, $100-$1000, applies to all FCRA violations, including situations where a user obtains a credit report for no permissible reason, or where the consumer reporting

agency willfully failed to ensure reasonable procedures were in place to ensure the accuracy of a report, or where the consumer reporting agency willfully reported information that it was statutorily forbidden to report. *See, e.g.* 15 U.S.C. §§ 1681e(b), 1681c(a), 1681b(a). Given the broad range of FCRA violations which can fall within the $100-$1,000 range and the fact that many of those violations are more egregious than those presented here, it is likely that, even at the end of successful litigation, each Class Member's recovery would be much closer to $100 than $1,000.

In sum, members of the Settlement Class face significant legal issues that make the likelihood of success at trial uncertain at best. The substantial risks inherent in this case strongly support settlement at this stage of litigation.

      **B.**      **The Settlement Falls Within the Range of Recovery.**

The second and third factors for assessing a settlement, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). The range of possible recovery "spans from a finding of non-liability through varying levels of injunctive relief." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

The monetary amount recovered by Class Counsel in this case is comparable and actually better than many FCRA class action settlements. For example, in *Simons v. Aegis*, inadequate disclosure claims were settled for a $33 gross payment for around 20,000 class members on a gross basis. *See Simons v. Aegis Comm. Grp.*, No. 2:14-cv-04012, Mot. for Prelim Approval at 5, 11

9

(W.D. Mo. Aug 11, 2014) (Doc. 24) & Order Granting Final Approval (W.D. Mo. Jan. 15, 2015) (Doc. 32). Indeed, in the FCRA context the pro rata Settlement Class member recovery of is in line with -- and in many cases better -- than the per class member settlement amounts in similar cases under the FCRA. *Walker v. McLane/Midwest, Inc*., No. 14-cv-4315, Mem. Supp. Prelim. Approval at 5 (W.D. Mo. June 29, 2015) (*See* ECF No. 29, approving ECF No. 25-1) (disclosure class members will receive payment of $24.40); *Landrum v. Acadian Ambulance Serv*., No. 14-cv-1467, Mot. Final. Approval at p. 6 (S.D. Tex. November 5, 2015) (ECF No. 37) (disclosure class members will receive payment of $10.00).   The Settlement therefore is within the range of other FCRA class action cases. On one hand, there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed. Under the Parties' Settlement Agreement the Settlement Class members can quickly realize a portion of their possible FCRA claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation.

The Settlement here is substantially better than both *Walker* and *Landrum*. The Named Plaintiff supports the Settlement. And not a single class member objected to it. Thus, these factors weigh in favor of approval of the Settlement.

         **C.**      **The Litigation Has Been Complex, Costly, and Substantive.**

The case was originally filed with the Court on May 12, 2017. (Doc. 2). Plaintiff also propounded class-wide discovery. Defendant filed its answers and affirmative defenses, (Doc. 28). During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Class (2,009 people), information on Defendant's background check process, and the FCRA

disclosure and authorization/consent forms received by the Named Plaintiff. The parties also conducted depositions. Prior to the deadline for Defendant to respond to Named Plaintiff's Motion for Class Certification, the Parties filed a Motion seeking a stay from the Court pending mediation. (Doc. 66). The Parties' Motion to Stay was granted (*See* Doc. 67), and mediation was held on May 10, 2018. Finally, on July 20, 2018, this Court granted preliminary approval of the Class Action Settlement and certified the class for settlement purposes only. (Doc. 75).

In sum, this class action was resolved only after detailed research and analysis of the claims at issue and comprehensive information exchanges by the Parties. Further litigation and motion practice would increase the expense of this litigation, but would likely not reduce the risks of litigation for the settlement class. This factor, too, cuts in favor of approval.

### D.     **There Has Been No Opposition to The Settlement.**

None of the class members objected to the proposed settlement, and only 2 asked to be excluded. Lack of objections is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *Allapattah Servs. v. Exxon Corp.*, CASE NO. 91-0986-CIV-GOLD/SIMONTON, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. Apr. 7, 2006); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Camp v. City of Pelham*, No.: 2:10-cv-01270-MHH, 2014 U.S. Dist. LEXIS 60496, at *11 (N.D. Ala. May 1, 2014) (fact that no objections were received, "points to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted)); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'"). Here, there were no objections to the settlement

submitted and only 2 people asked to be excluded. Further, the participation rate among the class indicates acceptance of the settlement terms among the entire settlement class. Therefore, this critical factor weighs heavily in favor of final Court approval of the settlement.

### E. Settlement Was Achieved Following Substantive Litigation.

As set forth above, the Parties have engaged in litigation, participated in preliminary discovery on class size, and conducted arm's length settlement negotiations. This was not an example of a case in which the Parties agreed to settle promptly after the complaint was filed. Rather, the Parties have extensively analyzed the strengths and weaknesses of their respective claims and defenses, as well as the advantages and disadvantages of settlement. The Parties reached settlement after months of active litigation. Class counsel thus believes that the settlement is in the best interest of the settlement class. In short, all of the factors enumerated in this Circuit for determining whether a proposed settlement is fair, adequate, and reasonable support final approval in of the proposed Settlement.

### F. The Settlement is Not the Product of Collusion.

There is no evidence of collusion in this proposed settlement, and "[t]here is a presumption of good faith in the negotiation process. Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014); *see also Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *26-27 (M.D. Fla. Nov. 23, 2009) (upon showing of arm's length negotiation and lack of collusion, threshold for collusion standard satisfied); *Behrens*, 118 F.R.D. at 539 (a court "can rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel'") (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, all of the evidence reflects that the settlement was the product of arm's length negotiations. As noted above, the Parties reached a settlement after Plaintiff sought Rule 23 class certification, exchanging preliminary information on the class size, and participated in extensive settlement discussions. As such, the Court should find that the settlement is not the product of collusion. *See Bennett*, 737 F.2d at 987 ("In sum, the court has determined that the settlement has been achieved in good faith through arms length negotiations and is not the product of collusion between the parties and/or their attorneys. There is no evidence of unethical behavior, want of skill or lack of zeal on the part of class counsel."); *accord Behrens*, 118 F.R.D. at 539; *Canupp*, 2009 U.S. Dist. LEXIS 113488, at *27.

## MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS

In their Joint Motion for Preliminary Approval, the Parties presented detailed justification for certification of the settlement classes under Rule 23(a) and 23(b)(3). (*See* Doc. 74). The Court's Preliminary Approval Order found that, for settlement purposes, the settlement class was proper under Rule 23(a) and 23(b)(3). (Doc. 75). Since the Court's Preliminary Approval Order, no objections addressing certification issues have been received. As recognized in the Agreement and the Court's Preliminary Approval Order, the settlement class is appropriate for the reasons summarized in the Parties' Joint Motion for Preliminary Approval, and as set further set forth below.

**A.     The Settlement Class Satisfies All Rule 23(a) Requirements.**[2]

**1.     The Settlement Class Meets the Numerosity Threshold.**

---

[2] The Defendant does not challenge certification of the Settlement Class for purposes of this settlement and joint motion for final approval only. The Defendant, however, does not concede that certification is appropriate under Rule 23 of the Federal Rules of Civil Procedure for any other purpose and in fact was prepared to challenge the propriety of certification but for the settlement.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The settlement class certified by the Court has approximately 2,009 members, thus exceeding the numerosity threshold at which joinder is impracticable. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class plaintiffs is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 U.S. Dist. LEXIS 130591, at *4 (M.D. Fla. Sept. 12, 2013) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

### 2. The Class Members Share Common Questions of Law and Fact.

As more fully detailed in the Parties' Joint Motion for Preliminary Certification, the settlement class shares common questions of law and fact and alleges a similar harm. The claims of the Settlement Class members are based on the same set, or a similar set, of operative facts, including: (1) whether Defendant's "CONSUMER DISCLOSURE AND AUTHORIZATION FORM Disclosure Regarding Background Investigation" and its "Authorization of Background Investigation" form satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); (2) whether the inclusion of alleged extraneous information in the forms violates the FCRA; and, (3) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages.

As a result of the similar nature of these facts and legal issues the class claims readily satisfy the commonality requirement of Rule 23(a)(2). *See, e.g., Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006) (finding commonality and certifying FCRA class when all class members received the same mailer); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D.295 (N.D. Ill. 2005) (same); *Walker v. Calusa Investements, L.L.C.*, 244 F.R.D. 502 (S.D. Ind. 2007) (same); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 411 (E.D. Pa. 2010)

(finding commonality where class members sought statutory damages under the FCRA and the case turned on whether the defendants' alleged conduct was willful).

### 3. Claims Have Arisen from Similar Legal and Remedial Theories.

This Court properly found in its Preliminary Approval Order that Rule 23(a)(3)'s demand for typicality has been satisfied by the Parties' showing that the class representatives' and class members' claims have arisen from similar legal or remedial theories. *See Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *6 ("The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary," *citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) *and Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 627 (M.D. Fla. 2010), *adopted by Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 2010 U.S. Dist. Lexis 15739 (M.D. Fla. 2010)) (internal quotations and citations omitted). No change to the claims has arisen since the Court entered its Preliminary Approval Order, and for these reasons the typicality requirement is satisfied.

### 4. The Dual Requirements of Adequacy Are Satisfied.

The adequacy requirement of Rule 23(a)(4) "'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. Lexis 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)). No objection or information contrary to the Court's Preliminary Approval Order has been raised contesting the ability of the class representative, Elayne Figueroa, and of Class Counsel to fairly and adequately protect the interests of the class. Further, no evidence has arisen of an improper conflict of interest between

the class representative and her counsel and any members of the settlement class. Class counsel is qualified to guide the class and there is no reason to doubt their ability to adequately prosecute the action.

### B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3).

As more fully detailed in the Parties' Joint Motion for Preliminary Approval, the settlement class meets the requirements of Rule 23(b)(3) in that common questions of law affecting proposed class members predominate over questions affecting individual members and that class action is the best available method for adjudicating this controversy.

#### 1. Predominance.

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle v. Law Offices of Charles W. McKinnon, P.L.*, No. 2:12-cv-14172-KMM, 2013 U.S. Dist. LEXIS 29263, at *10-11 (S.D. Fla. Mar. 5, 2013) (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

As set out in the Parties' Joint Motion for Preliminary Approval, here common questions of law and fact predominate. The central common issues in this case are whether Defendant's FCRA forms satisfy the notice and authorization requirements under the FCRA and, if not, whether Defendant's failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all Settlement Class members in

16

broad strokes. Thus, class certification is appropriate. *See Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *18 (W.D. Pa. Dec. 2, 2013) (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] based on the different reasons for which [defendant] allegedly declined to hire different [class] members is not fatal to the predominance requirement's fulfillment.").

## 2. Superiority.

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Of the approximately 2,009 class members none objected to the Settlement. This positive response rate and lack of objections demonstrates that there is significant interest in the collective resolution of these claims. Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer v. Summit Partners, L.P.*, No. 1:11-CV-38, 2012 U.S. Dist. LEXIS 63795, at *20 (E.D. Tenn. May 7, 2012) ("Given the small amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Larsen v. Union Bank, N.A.* (*In re Checking Account Overdraft Litig., MDL No. 2036*), 275 F.R.D. 666, 679 (S.D. Fla. 2011). Rather than having separate lawsuits filed in different parts of the state in different courts by different putative class members, the Settlement -- if granted final approval -- will instead allow all claims by the Settlement Class to be resolved in one case. Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *21 (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Hence, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met. *Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue). Concentrating all the potential litigation concerning the FCRA rights of Named Plaintiff and the Settlement Class in this Court will avoid a multiplicity of suits while also conserving judicial resources and the resources of the Parties. Thus, this proposed settlement is the most efficient means of resolving the FCRA claims of the Named Plaintiff and Settlement Class members.

For these reasons, Plaintiff respectfully submits to the Court that the prerequisites for certification have been met. Plaintiff further requests that the Court issue a final order certifying

for settlement purposes the Class identified in the Parties' Joint Motion for Preliminary Approval and enter the attached proposed Final Order.

### C. The Court Should Grant Plaintiff's Fee Petition and Award an Incentive Payment to the Class Representative, Elayne Figueroa.

The Court should also grant Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs for the reasons set out in Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs. Indeed, since the filing of Plaintiffs' fee petition, Class Counsel has expended significant time drafting and finalizing this Motion, and its exhibits, for which they seek no additional compensation.

Finally, named Plaintiff, ELAYNE FIGUEROA, should be awarded an incentive payment of $5,000 for her work in originating this action, and for the invaluable assistance she provided to Class Counsel as the class representative.

## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that the Court: (1) order final approval of the parties' Settlement; (2) dismiss Plaintiff's and the Settlement Classes' claims against Defendants with prejudice; and (3) grant Plaintiff's Unopposed Motion for Attorneys' Fees and Costs. A proposed final Order is attached hereto as Exhibit A.

Dated this 19th day of October, 2018.

| | |
|---|---|
| /s/*Thomas M. Gonzalez* | /s/*Brandon J. Hill* |
| **THOMAS M. GONZALEZ** | **LUIS A. CABASSA** |
| Florida Bar Number: 192341 | Florida Bar Number: 0053643 |
| **NATHAN J. PAULICH** | Direct Dial: (813) 379-2565 |
| Florida Bar Number: 85190 | **BRANDON J. HILL** |
| **Thompson, Sizemore, Gonzalez & Hearing, P.A.** | Florida Bar Number: 0037061 |
| | Direct Dial: (813) 337-7992 |
| 201 North Franklin Street, Suite 1600 | **Wenzel Fenton Cabassa, P.A.** |
| Tampa, FL 33602 | 1110 N. Florida Avenue, Suite 300 |
| Telephone: (813) 273-0050 | Tampa, Florida 33602 |
| Facsimile: (813) 273-0072 | Main Number: (813) 224-0431 |
| Email: tgonzalez@tsghlaw.com | Direct Dial: (813) 379-2565 |
| *Attorneys for Defendant* | Facsimile: (813) 229-8712 |
| | Email: lcabassa@wfclaw.com |
| | Email: twells@wfclaw.com |
| | *Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/*Brandon J. Hill*